IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned On Briefs June 28, 2011

## MATTHEW SWEET v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 08CR295    John F. Dugger, Jr., Judge**

---

**No.  E2010-01502-CCA-R3-PC - Filed August 19, 2011**

---

Petitioner, Matthew Lee Sweet, was convicted by a Greene County jury of two counts of aggravated child abuse. *State v. Matthew Lee Sweet*, No. E2007-00202-CCA-R3-PC, 2008 WL 1723431, at *1 (Tenn. Crim. App., at Knoxville, Apr. 15, 2008).  He received an effective sentence of twenty-five years.  *Id.*  Petitioner's convictions were affirmed in a delayed appeal.  *Id.*  Subsequently, Petitioner sought post-conviction relief on the basis of ineffective assistance of counsel.  After a hearing on the petition, the post-conviction court denied post-conviction relief and dismissed the petition.  After a thorough review, we determine that Petitioner has failed to show clear and convincing evidence that he is entitled to post-conviction relief.  Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Troy L. Bowlin, II, Morristown, Tennessee, for the appellant, Matthew Sweet.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Tara B. Trent, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Factual Background*

Petitioner was charged by presentment of the Greene County Grand Jury with two counts of aggravated child abuse.  *Id.*  The counts alleged that Petitioner committed "aggravated child abuse of a child six years of age or less," on two separate occasions.

During one occasion, the victim "suffered an orbital fracture and rib fractures and an arm fracture and a leg fracture." On the second occasion, the victim "suffered a fracture of the upper left forearm and nothing else." *Id.* Medical testimony indicated that the injuries were non-accidental. *Id.* at *4.

The proof at trial revealed that Petitioner's six-week-old son was brought into the hospital with marks on his rib cage and legs. *Id.* at *1. Petitioner, his mother, and the victim's mother were all interviewed at the hospital. Petitioner initially claimed that he dropped the victim in his car seat and shook the victim. *Id.* In a later interview, Petitioner admitted that he was responsible for the victim's injuries. According to Petitioner:

> [Petitioner] and [the victim's mother] were watching television when the victim began crying. [Petitioner] stated that he picked up the victim from the swing in which he was sitting and threw him into the air several times. [Petitioner] said that he nearly missed catching the victim and had to grab one of his legs. [Petitioner] conceded that he should have stopped at that point, but he threw the victim into the air once more. [Petitioner] did not catch the victim, and the victim fell into the swing and "cartwheeled." [Petitioner] said that the victim's head struck the lower bar, and his side hit an upper bar. [Petitioner] also said that he had dropped the victim a couple of weeks prior to this incident.

*Id.* at *5. The examination at the hospital "revealed the victim had four rib fractures on his right side and a 'significant' bruise on his lung in the area of the rib fractures." *Id.* at *2. The victim also had injuries to his liver, rib cage, lung, and the orbit behind his right eye as well as breathing problems. *Id.* at *2. The victim's injuries were described as "very severe." *Id.*

Several witnesses testified that Petitioner was alone with the victim in close proximity to the hospital visit. During the instances, the victim was crying and the victim suddenly stopped crying. *Id.* at *3. During an interview, Petitioner admitted:

> [T]he victim had been "screaming bloody murder for like three or four days." [Petitioner] said he picked up the victim. The victim was breathing, but his ribs "were making a popping noise." [Petitioner] thought something was wrong with the victim. [Petitioner] rubbed the victim's back and legs, and the victim screamed louder. [Petitioner] saw bruises on the victim's legs.

*Id.* Petitioner denied hurting the victim but mentioned that he:

[D]ropped him about three weeks ago when I was walking to go to the garden and tripped. I grabbed his leg as he was falling down. I may have grabbed him by the legs from some near misses when throwing him up. There's been a couple of times I've grabbed him by the legs to pull him back and change his diaper and I noticed the bruises in a couple of days.

*Id.* at *4. Petitioner presented the testimony of the victim's mother and his own mother. *Id.* at *6. After hearing the evidence, the jury found Petitioner guilty of two counts of aggravated child abuse. *Id.* at *7. The trial court imposed a twenty-five-year sentence for each count, to be served concurrently. Trial counsel did not file a notice of appeal or seek to withdraw from representation. *Id.* Petitioner filed for post-conviction relief, seeking a delayed appeal based upon counsel's failure to pursue an appeal or withdraw. Petitioner was granted a delayed appeal. *Id.*

On direct appeal, this Court affirmed the convictions and sentence. *Id.* at *11. Subsequently, Petitioner sought post-conviction relief. At a post-conviction hearing, Petitioner testified that when the charges were brought against him he was appointed an attorney. He met with this attorney two or three times for about forty-five minutes. His family then retained an attorney. This attorney represented Petitioner at trial. Petitioner recalled meeting with trial counsel three times prior to trial. Each meeting lasted about thirty to forty-five minutes. Petitioner claimed that he never saw any discovery materials prior to trial but remembered discussing what they "were going to do at trial" and the State's evidence. Petitioner did not remember if trial counsel had interviewed any of the witnesses prior to trial and insisted that he was sentenced immediately after the trial concluded.

On cross-examination, Petitioner admitted that trial counsel also represented him in the juvenile court proceedings that arose out of the same factual scenario as the criminal charges. During the juvenile proceedings, some of the witnesses that testified later testified at the criminal trial.

Petitioner recalled giving several statements to police but claimed that trial counsel did not file a motion to suppress the statements prior to trial. Petitioner testified that he took a polygraph test prior to giving one of the statements to police. Petitioner also testified that he and trial counsel discussed the fact that Petitioner would not testify at trial.

The attorney that was initially appointed to represent Petitioner testified at the hearing. He recalled that he filed a motion for discovery on Petitioner's behalf. He received the discovery and discussed it with Petitioner. His representation ended shortly thereafter when Petitioner retained trial counsel.

Trial counsel testified at the hearing that he was retained by Petitioner's mother for a flat fee. Trial counsel had previously been appointed to represent Petitioner in the juvenile court proceedings with regard to the dependency and neglect case. Trial counsel received and reviewed the discovery from the Public Defender's Office and went over the papers with Petitioner at the jail. Trial counsel recalled meeting with Petitioner at least a "dozen" times after he delivered the discovery. Trial counsel and Petitioner talked "weekly."

Trial counsel took several depositions in conjunction with the juvenile case and gave Petitioner the option to attend the depositions. Petitioner chose not to attend despite trial counsel's claim that it was "important" for Petitioner to be present. Petitioner was presented with copies of the transcribed depositions.

Trial counsel testified that he interviewed all of the witnesses in the case with the exception of one. Trial counsel did not seek independent review of the medical records because he felt that the medical evidence was performed by neutral "third parties" prior to the State's involvement in the case. Additionally, trial counsel had previously worked with several of the medical professionals who were involved in the case.

Trial counsel did not file a motion to suppress Petitioner's statements prior to trial because he felt there was no legal basis for filing the motion. Trial counsel remembered that Petitioner had signed *Miranda* waivers prior to giving the statements. Trial counsel claimed, however, that Petitioner had not informed him about a polygraph test.

Trial counsel explained that his trial strategy was to convince the jury that Petitioner did not commit the crime. Trial counsel was concerned about the inconsistent statements given by Petitioner prior to trial and the fact that they were contrary to the doctor's expected testimony of how the injuries could have occurred. Trial counsel even attempted to settle the case prior to trial, but Petitioner ultimately chose to go ahead with the trial.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In an order issued at a later date, the post-conviction court determined that of the "twenty-seven different reasons as to how [trial counsel] was ineffective, . . . [m]any of [trial counsel's] decisions were tactical and were based on his adequate preparation." In other words, trial counsel did not render ineffective assistance of counsel.

Petitioner filed a timely notice of appeal.

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, Petitioner complains that the post-conviction court improperly denied his petition for post-conviction relief. Specifically, Petitioner argues that he received ineffective assistance of counsel because counsel: (1) failed to file any pretrial motions, specifically a motion for bill of particulars and a motion to suppress; (2) failed to obtain an independent medical expert; (3) failed to meet with Petitioner on a regular basis; (4) failed to request a sentencing hearing; and (5) failed to ensure Petitioner's presence at the depositions.

The record supports the conclusions of the post-conviction court. With regard to pretrial motions, the record shows that trial counsel considered filing a motion to suppress but that the motion was unwarranted based on the adequacy of the *Miranda* waivers that were in the discovery documents provided by the State. The post-conviction court found the testimony of trial counsel to be "more credible than Petitioner." The post-conviction court determined that the decision to forgo a motion to suppress was a tactical decision made by trial counsel after preparation for the case. Again, we will not second-guess a reasonably-based trial strategy that is made after adequate preparation for the case. *Adkins*, 911 S.W.2d at 347; *Cooper*, 847 S.W.2d at 528. Further, Petitioner has failed to show that the motion to suppress would have been granted or that there is a reasonable probability that the proceedings would have concluded differently had counsel performed the suggested task. *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687). The evidence does not preponderate against the determination of the post-conviction court.

Likewise, the evidence does not preponderate against the post-conviction court's determination that Petitioner failed to prove trial counsel was ineffective for failing to obtain a medical expert. The proof at the hearing indicated trial counsel interviewed and deposed several of the State's doctors prior to trial. According to trial counsel, he had worked with these doctors before on other cases and felt that they were impartial third parties because they were involved in the case prior to the State. Petitioner did not present witnesses at the hearing that would have established evidence contrary to that of the medical testimony introduced at trial. Petitioner must present witnesses at the post-conviction hearing to prevail on a claim of deficient representation for failing to call a witness at trial. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). A post-conviction court may not speculate, "on the question of . . . what a witness's testimony might have been if introduced at trial." *Id.*

Petitioner next claims that trial counsel failed to meet with him regularly and keep him apprised of the status of his case.[1] The record does not support this claim. In other words, the evidence does not preponderate against the post-conviction court's determination that trial counsel rendered effective assistance of counsel. The evidence indicated that trial counsel met with Petitioner at least a "dozen" times after delivering discovery to him at jail. These meetings were in addition to any meetings the two may have had regarding the juvenile court proceedings. Trial counsel also mentioned that he and Petitioner spoke "weekly." As stated above, the post-conviction court accredited trial counsel's testimony. Petitioner is not entitled to relief on this issue.

Petitioner alleged that trial counsel was ineffective for failing to request a sentencing hearing. The transcript of the trial indicates that Petitioner was afforded a sentencing hearing immediately after the verdict was rendered by the jury and that the trial court had a presentence report at its disposal prior to the hearing. Further, Petitioner does not indicate how the alleged deficiencies of trial counsel with regard to sentencing were prejudicial. Petitioner is not entitled to relief on this issue. *Powers*, 942 S.W.2d at 558.

Lastly, Petitioner alleges that trial counsel was ineffective for failing to compel his presence at the depositions taken of the witnesses and experts. The petition filed by Petitioner lists trial counsel's failure to petition for an independent medical expert but does not allege that trial counsel was ineffective for failing to compel Petitioner's presence at the depositions of experts and witnesses. Moreover, Petitioner did not present any argument to show how trial counsel's alleged deficiencies were prejudicial. This claim is waived.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

---

[1] The State counters that Petitioner failed to raise this issue in his petition for post-conviction relief and, therefore, has waived the issue on appeal. While Petitioner did not raise this issue by itself in the lengthy petition for relief, Petitioner made allegations throughout the petition that trial counsel failed to communicate with him about the case.